UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 08-80663-CIV–MARRA/JOHNSON

MARIKA TOLZ, as TRUSTEE of
the CHAPTER 7 BANKRUPTCY
ESTATE OF JENNIFER LEE BEEBE

       Plaintiff

v.

GEICO GENERAL INSURANCE
COMPANY, a foreign for profit
corporation, and CHRIS JONES

       Defendants.
_____/

### ORDER AND OPINION DENYING MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment [DE 160]; Plaintiff, Marika Tolz, as Trustee of the Chapter 7 Bankruptcy Estate of Jennifer Lee Beebe's, Motion for Final Summary Judgment [DE 161]; and Geico General Insurance Company's Motion For Leave to File Notice of Supplemental Authority [DE 201]. The motions are fully briefed and ripe for review. The Court has carefully considered the entire Court file, oral argument of counsel, and is otherwise fully advised in the premises.

Introduction

This case involves causes of action brought by the Plaintiff, Marika Tolz, as Trustee of the Chapter 7 Bankruptcy Estate ("Trustee") of Jennifer Lee Beebe ("Beebe") against Geico General Insurance Company ("Geico"). The claims involve

actions allegedly taken by Geico during the handling of a claim by Mayra Granados ("Granados") against Beebe for injuries sustained by Granados in an automobile accident. At the time of the accident, Geico insured Beebe under an automobile insurance policy providing limits of $100,000 per person and $300,000 per occurrence for bodily injury. This suit was brought after the case styled *Mayra Granados, et al. v. Jennifer Beebe, et al.*, Case No. 05-16696 CACE (25), resulted in a judgment against Beebe in excess of her policy limits.[1] The Plaintiff has sued Geico for bad faith as successor in interest to Beebe, alleging that Geico did not tender the applicable policy limits to Granados in a timely fashion.[2] Geico subsequently removed the action to federal court pursuant to 28 U.S.C. § 1441, alleging diversity jurisdiction under 28 U.S.C. § 1332.

The focus of Plaintiff's motion for summary judgment is Geico's alleged bad faith failure to communicate with Beebe after the serious accident in which Granados was catastrophically injured. Defendant's motion seeks summary judgment for Geico arguing no reasonable jury could conclude that Geico handled Granados' claim against Beebe in bad faith. The Court finds that neither side is entitled to summary judgment as a matter of law because genuine issues of material fact remain.

---

[1] Litigation of the claim against Beebe resulted in a final consent judgment being entered against Beebe for $3,000,000.00 plus interest at the rate of 11% per year.

[2] Defendant Chris Jones was dismissed from this action as fraudulently joined. See DE 140.

Undisputed Material Facts

On August 30, 2005, Geico adjuster Chris Jones ("Jones") received a telephone call from Michael May ("May"), Granados' live-in boyfriend. May reported that an automobile accident had occurred involving Granados. DE 160, Ex. B at GLC 1599; Ex. C at 195. May also reported that Granados, at the time of the accident, was a passenger in her own vehicle which was being driven, with permission, by a woman known to him only as "Jennifer" when it was involved in a two car collision. *Id*. May reported that the vehicle contained an additional passenger, known to him only as "Jimmy," and that Granados was in the hospital and unconscious. Geico's activity log ("ALOG") of August 30, 2005, indicates that May verbally reported that "Granados's injuries are severe, and [it] appears that she is paralyzed from the waist down."[3] DE 160, Ex. B at GLC 1599.

The next day, on August 31, 2005, Geico was contacted by attorney Robert DiStefano ("DiStefano"). DE 160, Ex B at GLC 1601. DiStefano advised Jones that he represented Beebe, the driver of the insured vehicle at the time of the accident. During this telephone call, DiStefano did not provide Jones with any substantive information regarding the details of the accident, but advised that he was attempting to obtain the police report and would forward it to Geico upon receipt. *Id*. That

---

[3] This information, what May reported to Jones and what Jones recorded in the ALOG, is undisputed. The parties do dispute whether May reported other information during this very first call to Geico, which was not memorialized in Jones' ALOG. *See* Discussion, *infra*.

same day Geico received a letter of representation from DiStefano via facsimile, which indicated that he represented Beebe "in connection with an automobile accident which occurred on August 27, 2005," and requested insurance information pursuant to Section 627.4137, Florida Statutes.  DE 160, Ex. E.  The letter indicated that DiStefano represented multiple clients, although this was apparently a typographic error.  DiStefano Depo. 11-12.  Following DiStefano's telephone call and receipt of his letter of representation, Geico believed that DiStefano represented both Beebe and Granados with regard to the accident, although this belief was later discovered to have been mistaken.  DE 160 at GLC 1601-02, Ex. G at GLC 121, DiStefano Depo. 15-17.

On September 20, 2005, after learning that DiStefano did not represent Granados, Geico telephoned May in an effort to obtain additional information regarding the accident.  DE 160, Ex. B at GLC 1602.  May advised that he had been unable to obtain the police report and did not know the location of the accident, but he did have the police report number, which he gave to Geico.  May Depo. 16-18.  At this time, Geico advised May of the coverages and limits available under the policy. *Id*.  May reported that he believed the driver of the second car involved in the accident to have been arrested at the scene for driving while intoxicated. *Id*.

On September 23, 2005, Geico's field representative, Joe Bender ("Bender"), was able to obtain a "Complaint/Arrest Affidavit" regarding Davis Porfirio Hernandez ("Hernandez"), the driver of the second vehicle.  GLC 1603, Yates Depo. 223-24; GLC

238-39.  The report indicated that Hernandez had been charged with multiple criminal counts for driving his vehicle while intoxicated at the time of the accident.  *Id.*  On this date, Geico also learned that the police accident report was not yet available.

Geico continued its efforts to obtain the police report directly through its field representative, Bender.  On September 27, 2005, Bender was informed by the Miami Police Department that Officer Muina, the investigating officer, had not yet turned in the accident report.  *Id.*  Bender subsequently attempted to contact Officer Muina directly, and left a message with his office that Geico was seeking the accident report.  GLC 1603; Yates Depo. 227.  On October 2, 2005, Bender again attempted to contact Officer Muina directly regarding the report, and was informed that Officer Muina had been transferred.  GLC 1604; Yates Depo. 228.  The field representative then attempted to contact Officer Muina's supervisor, but was unsuccessful.  *Id.*; Bender Depo. 27-29, Ex. I.  On October 3, 2005, Jones communicated his continued need for the police report to Bender.  GLC 1604; Yates Depo. 229-30; Bender Depo. 28-29.

On October 10, 2005, Geico received a letter from Paul Pecaro, Esq. ("Pecaro"), indicating that he represented Granados and requesting insurance information pursuant to Section 627.4137, Florida Statutes.  DE 160, Ex. K, GLC 1604, Yates Depo. 230-31.  At this time, Jones advised Pecaro's office of the difficulties it had encountered in investigating the accident and obtaining a police report.  *Id.*

Geico provided Pecaro's office with a copy of the Hernandez arrest report and an affidavit of coverage. Pecaro Depo. 52-53 (Ex. J); Pecaro letter, DE 160, Ex. K, GLC 223. On October 17, 2005, Jones instructed Bender that it was "imperative that we acquire the police report on this loss as soon as possible." ALOG, GLC 1605; Bender Depo. 33-34. Also on October 17, 2005, Pecaro informed Geico that Granados was to be released from the hospital on October 25, 2005, and was still unable to walk, but provided no documentation of her injuries. DE 160, Ex. B at GLC 1605.

On October 24, 2005, Geico received the police report of the accident from Hernandez's automobile insurance carrier, Allstate Insurance Company. The police report indicated that the traffic lights controlling the intersection where the accident occurred were inoperable and that the damage to the vehicles did not appear to match the eye witness testimony. DE 160, Ex. B at GLC 1606; Yates Depo. 237-42; Florida Traffic Crash Report, GLC 231-36 (Ex. L).

On the following day, October 25, 2005, Geico sent its third letter to DiStefano seeking the recorded statement of Beebe and advising him of the potential that a claim may be made against Beebe for her role in the accident. DE 160, Ex. B at GLC 1606; DE 161, Ex. C at 31, Ex. 4; Yates Depo. 243-44; DiStefano Depo. 27-32. Jones also attempted to contact DiStefano by telephone to advise him verbally of the same information, but was unable to reach him due to disruptions caused by Hurricane Wilma. DE 160, Ex. B at GLC 1606. Beebe testified that she never saw any of the three letters sent to DiStefano regarding her needing to give a recorded statement.

Beebe Depo. 59-60.

DiStefano testified that he advised Beebe of the substance of Geico's communications to him. During his deposition, DiStefano was asked if the information he received in Geico's October 25, 2005 letter was information that he would have passed along to Beebe. DiStefano responded: "Absolutely. But she definitely would have notice of this either through a telephone call, or I would have called her in and discussed it with her, or maybe I mailed her a copy of the letter. I don't recall." DE 160, Ex. F at 26-27.

Geico states that it made the decision to tender the full $100,000 Bodily Injury policy limits to Granados on behalf of Beebe based on the information contained in the police report. ALOG, GLC 1606-1607, Yates Depo. 244-49; Corry Depo. 37-42. On October 28, 2005, Geico telephoned Pecaro and advised him that Geico would tender its full policy limits upon receiving verification of Granados' injuries, based on the newly discovered information that Beebe may share some portion of liability for the accident. ALOG GLC 1606-07, Yates Depo. 244-49. Pecaro advised Jones that his office was closed due to Hurricane Wilma, but that he would provide Jones with medical records confirming Granados' injuries "on Monday or Tuesday" (October 31, 2005 or November 1, 2005, respectively). ALOG, GLC 1607, Yates Depo. 249-50. Jones confirmed this conversation with Pecaro through a letter of the same date. *Id.*; GLC 219 (Ex. N); Pecaro Depo. 64-66.

On November 2, 2005, Jones telephoned Pecaro, who advised that he had not had time to send the requested medical records to Geico, but that he would send them via facsimile that afternoon or the next day.  ALOG, GLC 1608, Yates Depo. 254.  On November 9, 2005, Jones telephoned Pecaro's office and spoke to a staff member who advised that she had mailed Granados' records on November 7, 2005, but that she would also send them via facsimile that same day.  ALOG, GLC 1609, Yates Depo 261.  On November 11, 2005, Jones spoke to the same staff member at Pecaro's office, who advised that Pecaro would be withdrawing from the case due to a conflict of interest.  ALOG, GLC 1610; Yates Depo 264.  Geico received a letter from Pecaro on November 14, 2005, indicating that he had withdrawn his representation of Granados due to a conflict of interest.  ALOG, GLC 1611, GLC 222 (Ex. O); Yates Depo. 266; Pecaro Depo. 97-98.  Geico never received any medical records or documentation verifying Granados' injuries from Pecaro or his office, despite the repeated assurances that such documentation would be provided.  ALOG GLC 1609-12; Pecaro Depo. 69-71.

On November 9, 2005, Jones attempted to contact DiStefano to schedule a recorded interview of Beebe, but was informed that DiStefano's office had been unable to arrange an agreeable date for such an interview with Beebe.  ALOG GLC 1610; Yates Depo. 261-62.  On November 10, 2005, Jones received a call from a staff member of DiStefano's office who informed him that Beebe's recorded interview could take place on November 22, 2005 at 12:45 p.m.  *Id*.

On November 15, 2005, after receiving notice that Pecaro had withdrawn his representation of Granados, and having received no medical records or documentation of Granados' injuries from Pecaro prior to his withdrawal, Jones contacted Jackson Memorial Hospital to obtain independent confirmation of Granados' injuries. ALOG, GLC 1612; Yates Depo. 269-70. Jones was informed that Granados had been hospitalized from August 27, 2005 until September 27, 2005, and that her medical bills totaled $250,239.59. *Id*. Jones subsequently telephoned and spoke with Granados directly in order to determine how to address Jackson Memorial Hospital's lien. ALOG GLC 1613, Yates Depo. 267-68. Granados informed him that she would be meeting with a new attorney that afternoon and that Jones should discuss the matter with her new attorney. *Id*.; Granados Depo. 51-52 (Ex. P).

On the following day, November 16, 2005, Geico, having been unsuccessful in its attempts to locate and contact Granados' new attorney, issued a $100,000 check for the bodily injury policy limits to Granados and included Jackson Memorial Hospital, as a statutory lien holder, on the check in order to protect the lien. ALOG GLC 1613; Yates Depo. 268-69. Later that afternoon, Jones received a call from Vincent Leonard ("Leonard"), a paralegal who works with and assists Attorney Karen Terry ("Terry"). ALOG GLC 1614, Yates Depo. 272-73; Leonard Depo. 7-8, 30-32 (Ex. Q); Terry Depo. 14-15 (Ex. R). During this conversation, Leonard advised that Terry now represented Granados for her claims arising from the August 27, 2005 accident. ALOG GLC 1614, Yates Depo. 272-73; Leonard Depo. 60. Jones advised Leonard that

he had recently issued a check for Geico's full policy limits to Granados and inquired as to whether he should reissue the checks with Terry's name included, and how he should address Jackson Memorial Hospital's lien.  *Id*.  Leonard responded, "do what you gotta do."  *Id*.  Geico subsequently cancelled the previously issued check and issued a new check for $100,000, representing the applicable bodily injury policy limits, to Granados, Terry, and Jackson Memorial Hospital on November 22, 2005, along with a proposed release.  ALOG GLC 1614-15; Yates Depo. 273-74.  The letter regarding the tender listed the reasons for the tender as the severity of Granados' injuries and the fact that the accident occurred at an intersection where the lights were not functioning.  DE 161, Ex. E, Ex. 13; DE 160, Ex. D 14-15; DE 161, GLC 1599 (Ex A).

On November 22, 2005, a recorded interview of Beebe was taken by Geico.  ALOG GLC 1615; Beebe Depo. 41-43 (Ex. S).  Neither Beebe nor DiStefano can recall why Beebe's recorded interview was not able to take place until 76 days after Geico first requested such an interview on September 7, 2005, despite Geico's numerous requests.  Beebe Depo 43-45; DiStefano Depo. 17-19.  However, DiStefano testified during his deposition that he "doesn't normally give recorded interviews" and that he "definitely wouldn't give a statement until [he] at least saw what happened with the police report."  DiStefano Depo. 14, 19.

On December 7, 2005, Geico received a letter from Terry indicating that she represented Granados and that her client was rejecting Geico's settlement offer.

ALOG GLC 1617; Yates Depo. 274-64; GLC 211 (Ex. T).  The voided settlement check was returned along with the letter.  *Id*.  The letter provided no explanation as to the reason for the rejection.  On December 13, 2005, Jones spoke with Leonard who advised that the check had been returned "because they intend to file suit."  ALOG GLC 1617, Yates Depo. 284.  The suit styled *Mayra Granados, et al. v. Jennifer Beebe, et al.*, Case No. 05-16696 CACE (25) was subsequently brought by Granados, on behalf of herself and her two minor children, against Beebe and Hernandez.  Terry Depo. 28.  The suit eventually resulted in the entry of a consent judgment against Beebe in the amount of $3,000,000, plus interest at the rate of 11% per year on May 13, 2008.  Compl. ¶ 36.

Standard of Review

Summary judgment is appropriate if there is no question of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.  Trustee's complaint asserts a single cause of action for common law bad faith.  A claim for bad faith against an insurer will lie where "the insurer acted in its own best interests to the detriment of the insured; the insurer failed to act timely and thereby exposed the insured to an excess judgment." *Johnson v. Geico Gen. Ins. Co.*, 318 Fed. Appx. 847, 849 (11th Cir. 2009) (citing *Macola v. Gov't Employees Ins. Co.*, 953 So. 2d 451, 458 (Fla. 2006) ("the essence of a third-party bad faith cause of action is to remedy a situation in which an insured is exposed to an excess judgment because of the insurer's failure to properly or promptly defend the claim") (citations

omitted).

Under Florida law, "an insurer ... has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So.2d 783, 785 (Fla. 1980). "The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Id*.  The Florida Supreme Court has held repeatedly that "bad faith is ordinarily a question for the jury." *Berges v. Infinity Ins. Co.*, 896 So.2d 665, 681 (Fla. 2004).  Although on occasion the facts of a case allow a court to rule on a bad faith claim as a matter of law at summary judgment, this case is not one of those rare instances.  *Clauss v. Fortune Ins. Co.*, 523 So. 2d 1177, 1178 (Fla. Dist. Ct. App. 1998) (affirming summary judgment where facts are such that no jury could conclude insurer acted in bad faith).

Discussion

Florida law authorizes an insured party to sue its insurer for "[n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests."  Fla. Stat. § 624.155(b)(1).  In determining whether an insurance company acted in bad faith, courts apply a "totality-of-the-circumstances" standard.  *State Farm Mut. Auto. Ins. Co. v. LaForet*, 658 So.2d 55, 62-63 (Fla. 1995).

Genuine issues of material fact remain in this case.  For instance, the parties "strenuously disagree" *as to when* Geico became aware that Beebe could be potentially liable for the accident.  Geico states that it first realized that Beebe may be partially liable for the accident when it received the police report on October 24, 2005, and that it made the decision to tender the bodily injury limits to Granados four days later.  Trustee asserts that Geico was informed by May a few days after the accident that the lights at the intersection were not functioning (although Jones neglected to record this information in his ALOG entry) and that Geico had procedures in place by which it could have independently determined Beebe's potential liability for the accident prior to October 24, 2005, had it bothered to investigate.

Jones wrote in the ALOG that May reported that Granados' vehicle had been blind sided, the point of impact was to the front, and that Granados' injuries are severe and it appears that she is paralyzed from the waist down.  May testified at his deposition that he told Jones that Granados' vehicle had been T-boned, and that he also told Jones that the traffic lights were out at the intersection.  Trustee asserts that these details were told to Jones, but that Jones omitted them from the ALOG.  As a result, Trustee claims that Geico knew from the outset that the driver of Granados' vehicle might be subject to excess liability and therefore Geico should have settled the claim promptly.  When Geico first should have known that Beebe could be held partially liable for the accident is an important factor in deciding this

case. The record evidence does not establish, as a matter of law, when Geico knew this crucial fact.

The parties also disagree as to what DiStefano's role was as to Beebe, whether he was representing her for her offensive injury claims only, or whether he was also representing her for any defensive matters. This fact is material to the question of whether Geico failed to keep Beebe advised of her rights as an insured. This question also cannot be determined by the Court as a matter of law.

Since there are at least two genuine issues of material fact, the Court cannot enter judgment as a matter of law on Tolz's claim of bad faith. This case differs from Judge Huck's ruling in *Aboy v. State Farm Mutual Automobile Ins. Co.*, Case No. 09-21400-CIV-HUCK. In that case the critical facts were not in dispute. In *Aboy*, Judge Huck found "that a reasonable fact finder could not conclude that State Farm knew, or should have known, that Aboy's injuries were 'so serious that a judgment in excess of the policy limits [was] likely' until June 15, 2006 at the earliest," and that therefore State Farm did not have an affirmative duty to initiate settlement negotiations with Aboy until at least June 15, 2006." *Id*. at 8-9. In the instant case, the undisputed facts do not clearly establish when Geico should have known that Beebe might be partially liable for the accident that caused Granados' injuries. Therefore, both Trustee's and Defendant's motion for summary judgment will be denied. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment **[DE 160] is DENIED**; Plaintiff, Marika Tolz, as Trustee of the Chapter 7 Bankruptcy Estate of Jennifer Lee Beebe's, Motion for Final Summary Judgment **[DE 161] is DENIED**; and Geico General Insurance Company's Motion For Leave to File Notice of Supplemental Authority **[DE 201] is GRANTED.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 19th day of January, 2010.

_____
KENNETH A. MARRA
United States District Judge

copies to:

All counsel of record